UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

C.L., and G.G., on behalf of their minor child,
C.L.G.,

                                    Plaintiffs,

               v.

NEW YORK CITY DEPARTMENT OF
EDUCATION,

                                    Defendant.

┌─────────────────────────────────┐
│ USDC-SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC#:                            │
│ DATE FILED:  09/29/2022          │
└─────────────────────────────────┘

21-CV-7094 (RA)

MEMORANDUM
OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

        Plaintiffs C.L. and G.G., on behalf of their minor child, C.L.G., filed this lawsuit against

the New York City Department of Education (the "DOE") in connection with an underlying

administrative proceeding brought to enforce C.L.G.'s right to a free and appropriate public

education ("FAPE").  After an Impartial Hearing Officer ("IHO") ruled that C.L.G. had been

denied a FAPE during the 2019–2020 school year, Plaintiffs filed this motion for attorneys' fees

under the fee-shifting provision of the Individuals with Disabilities Education Act (the "IDEA").

20 U.S.C. § 1415(i)(3).  Plaintiffs request $46,020.00 in fees and costs, consisting of $20,925.00

for the administrative action and $25,497.00 for the instant federal action to recover fees—almost

$5,000 more than what they seek for their work on the underlying administrative proceeding.

While the Court grants the bulk of Plaintiffs' fees sought in conjunction with the administrative

action, it reduces counsel's fee rates and hours and declines to award any fees incurred after a

reasonable settlement offer was made by the DOE on November 24, 2022.  The Court thus grants

the motion, albeit subject to the significant modifications discussed below.

## BACKGROUND[1]

Plaintiffs retained The Law Office of Steven Alizio, PLLC ("LOSA") to represent their minor child in an administrative proceeding against the DOE during the 2019–2020 school year. Alizio Decl. ¶ 33.  Plaintiffs' counsel first filed a notice with the DOE stating that it had failed to provide C.L.G., Plaintiffs' child, with a free and appropriate public education and that Plaintiffs intended to enroll C.L.G. at the Aaron School if the DOE failed to address the issues outlined in the notice.  *Id.*  After the DOE did indeed fail to address these concerns, Plaintiffs commenced the underlying administrative proceeding by filing a due process complaint ("DPC") on July 1, 2019. *Id.* ¶ 34.

While the DPC was pending, Plaintiffs sought an interim order directing the DOE to fund the child's tuition at Aaron until the claims were resolved (the "pendency claim").  According to Plaintiffs' counsel, the pendency claim was unusual because, rather than stemming from an administrative hearing officer's finding, "pendency was founded in C.L.G.'s last unchallenged individualized education program" which recommended placement in a specific type of classroom environment.  *Id.* ¶ 38.

The case was assigned to IHO Israel Wahrman, who presided over a pendency hearing on July 24, 2019.  The hearing lasted 43 minutes, with both parties presenting opening arguments. IHO Wahrman ultimately scheduled a second hearing day on July 29, 2019, which consisted of live witness testimony and cross-examination of two of Plaintiffs' witnesses.  *Id.* ¶¶ 41–42.  The parties then submitted written briefs to IHO Wahrman, who issued an interim order finding that the DOE was required to fund C.L.G.'s placement at Aaron while the complaint was pending.  *Id.* ¶¶ 45–46.

---

[1] The following facts are drawn from the declarations of the lawyers who represented the parties in this action.

On May 29, 2020, the DOE made an offer to Plaintiffs to pay the full tuition reimbursement.  Goldman Decl. ¶¶ 10–14.  Because this offer contained numerous contingencies, Plaintiffs rejected it, and the parties reached an impasse.  Plaintiffs then requested a hearing on the merits. This hearing was held on June 15, 2020, included the testimony of three witnesses, and lasted 80 minutes.  *Id.* ¶ 53; Cassuto Decl. ¶ 6.  Plaintiffs submitted written closing statements and a closing brief.  Alizio Decl. ¶ 54.

The IHO ultimately issued Findings of Fact and Decision ("FOFD") in favor of Plaintiffs and ordered the DOE to fund the tuition associated with C.L.G.'s placement at Aaron for the 2019–2020 school year, as well as provide transportation to and from Aaron.  *Id.*

On January 20, 2021, Plaintiffs' counsel submitted its fee claim to the DOE for attorneys' fees and costs incurred during the administrative proceeding.  *Id.* ¶ 58.  By May 2021, the DOE had not agreed to Plaintiffs' demand.  LOSA thus commenced this federal action on August 23, 2021 to resolve Plaintiffs' claim for attorneys' fees and costs.   On November 24, 2021, the DOE made a formal settlement offer for $16,000.00, which Plaintiffs rejected.  Germanakos Decl. ¶ 16, Exs. E–F.

LOSA now seeks a total of $46,020.00 in fees and costs—consisting of $20,925.00 for the administrative action and $25,497.00 for the instant federal action.   That amount reflects, respectively, 58.2 and 68.5 total hours billed by LOSA attorneys and paralegals for the two separate components of this case.  Alizio Decl. Exs. A–B; Alizio Reply Decl. Ex. A.

The DOE does not dispute that Plaintiffs, as the prevailing party in the administrative action, are entitled to attorneys' fees.  It does, however, argue that both the rate sought for LOSA's attorneys and paralegals and the number of hours LOSA billed are unreasonable.

**LEGAL STANDARD**

"The IDEA grants district courts the discretion to award reasonable attorneys' fees and costs to a 'prevailing party.'" *R.G. v. N.Y.C. Dep't of Educ.*, No. 18-cv-6851 (VEC), 2019 WL 4735050, at *1 (S.D.N.Y. Sept. 26, 2019) (quoting § 1415(i)(3)(B)(i)).[2]  A plaintiff "prevails when actual relief on the merits of [her] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *K.L. v. Warwick Valley Cent. Sch. Dist.*, 584 F. App'x 17, 18 (2d Cir. 2014).  As previously stated, the DOE does not dispute that Plaintiff was the prevailing party in the administrative action.

"Reasonable attorneys' fees under the IDEA are calculated using the lodestar method, whereby an attorney fee award is derived by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Streck v. Bd. of Educ.*, 408 F. App'x 411, 415–16 (2d Cir. 2010).  In determining whether an hourly rate is reasonable, courts primarily consider the prevailing market rates in the community for comparable legal services.  *See* § 1415(i)(3)(C) (providing that attorneys' fees "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished").  The prevailing market rate has been characterized as "the rate a paying client would be willing to pay . . . bearing in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Ortiz v. City of New York*, 843 F. App'x 355, 359 (2d Cir. 2021).  Courts also consider the twelve factors discussed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974):

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time

---

[2] Unless otherwise noted, case quotations omit all internal quotation marks, citations, alterations, and footnotes.

> limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Lilly v. City of New York*, 934 F.3d 222, 228 (2d Cir. 2019). Because "the determination of fees should not result in a second major litigation," *Fox v. Vice*, 563 U.S. 826, 838 (2011), courts may consider the *Johnson* factors holistically, rather than applying each factor individually to the facts of the case. *See Green v. City of New York*, No. 05-cv-0429 (SLT) (ETB), 2010 WL 148128, at *10 (E.D.N.Y. Jan. 14, 2010). The trial court's goal should be "to do rough justice, not to achieve auditing perfection." *Fox*, 563 U.S. at 838. "The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

## DISCUSSION

Although Plaintiffs were the prevailing party in the underlying administrative action and are therefore unquestionably entitled to fees and costs, the Court concludes that the hourly rates sought and the hours submitted are not reasonable. While the Court grants the majority of the fees sought in conjunction with the administrative proceeding, it finds the fees sought in relation to this federal action to be unreasonable. Indeed, despite the Supreme Court's admonition that "the determination of fees should not result in a second major litigation," *Fox*, 563 U.S. at 838, Plaintiffs' counsel seeks almost $5,000 *more* in fees and costs for the instant federal action seeking fees than it does for its work on the underlying administrative proceeding. Not only has the Court reduced Plaintiffs' counsel's fee rates and hours, but refuses to award any fees after the DOE made an entirely reasonable settlement offer on November 24, 2021. The Court thus grants Plaintiffs' motion for attorneys' fees and costs but makes reductions accordingly.

I.       **Hourly Rates**

Plaintiffs request the following hourly rates for the attorneys and paralegals who billed time to this matter: (1) $375 per hour for Steven J. Alizio, Esq. prior to 2021 and $400 per hour for Mr. Alizio thereafter; (2) $375 per hour for Justin B. Shane, Esq.; (3) $350 per hour for Jennifer A. Gemmell Esq.; (4) and $150 per hour for work performed paralegals Dianne Ho and Nazc-a-ru Gonzalez.  The DOE contends that reasonable hourly rates for the LOSA employees are (1) $225 per hour for Alizio; (2) $300 per hour for Shane; (3) $200 per hour for Gemmell; and (4) $100 per hour for both Ho and Gonzalez.[3]

Applying the *Johnson* factors holistically, the Court finds that a modest reduction in Plaintiffs' counsel's rates is appropriate.  Plaintiffs allege that the case presented a novel legal question and required multiple rounds of briefing and two hearings.  Two witnesses testified live at the first hearing and three witnesses at the second.  Additionally, "'the degree of success obtained by plaintiff's counsel' is "the most critical factor in determining the reasonableness of a fee award," *C.D. v. Minisink Valley Cent. Sch. Dist.*, No. 17 CIV. 7632 (PAE), 2018 WL 3769972, at *11 (S.D.N.Y. Aug. 9, 2018) (citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)), and the parties do not dispute that LOSA obtained for Plaintiffs all of the relief they sought for their child.

Courts in this district routinely award senior partners specializing in special education litigation between $360 and $400 depending on the circumstances of the particular case.  *See, e.g.*, *L.L.* 2022 WL 392912, at *3 (awarding senior attorneys $360 per hour); *N.G.B.*, 2022 WL 800855,

---

[3] As is the practice of many judges in this district, the Court declines to rely on the rates described in the declarations submitted by other attorneys specializing in special education "as the starting point for the analysis of presumptively reasonable fees, because the submitted evidence either does not substantiate such rates were actually paid (versus claimed), or where rates are asserted to have been actually paid, does not provide relevant context for such rates billed." *L.L. v. N.Y.C. Dep't of Educ.*, No. 20-CV-2515 (JPO), 2022 WL 392912, at *3 (S.D.N.Y. Feb. 9, 2022).

at *3 (setting reasonable attorneys' fees at $400 for IDEA attorneys with almost twenty years of experience) (collecting cases).

Unlike some senior attorneys with decades of legal experience, Mr. Alizio has been practicing law for approximately six years, and had been practicing for only three years when this case began. With that said, the Court does not believe it would be fair to treat him as the equivalent of a junior attorney at a large firm, in light of the fact that he is the founder of his law firm and given the substantive nature of his work.[4]   In a recent IDEA case to recover attorneys' fees in this district, Judge Schofield awarded Mr. Alizio an hourly rate of $325 for his work beginning in May of 2020. *M.R., et al. v. N.Y.C. Dep't of Educ.*, No. 21-CV-668 (LGS), 2022 WL 3098347, at *3 (S.D.N.Y. Aug. 4, 2022). Due to the complexity of the instant case as compared with the administrative proceeding in Judge Schofield's case, Mr. Alizio's operation of his own law practice, extensive litigation record, and experience in the field, however, this Court is of the view that, a modest increase in his hourly fees is appropriate in this case. Accordingly, the Court finds that an hourly rate of $350 is appropriate for Mr. Alizio. The entries for his travel are to be charged at the rate of $175 an hour, or half of his approved hourly rate.

That rate is also reasonable for Mr. Shane, who has been licensed to practice law since 2006 and has practiced special education law since 2017, when he opened his own firm that represented parents of children with disabilities in IDEA cases. *See* Alizio Decl. ¶ 27. While he

---

[4] Determining a reasonable rate for Mr. Alizio presents a somewhat unusual task. After graduating college in 2004, Alizio worked as a public-school teacher for seven years. Alizio Decl. ¶¶ 14–15. He next attended law school, graduated in 2016, and spent one year as a fellow in the New York Legal Assistance Group's ("NYLAG") Special Education Unit. He then continued practicing special education law at the Law Office of Michelle Siegel, which he left after one year to form LOSA. *Id.* ¶ 18. Since its founding, LOSA has taken on three full-time employees, and according to Mr. Alizio, his services remain in high demand. *Id.* ¶ 20. Mr. Alizio reports having determined his primary hourly rate for this matter ($375), by averaging the cost for his services in 2016 and 2017, and increased his rate to $400 after observing that no other New York City-based special education firm charged less than $400 per hour for the principle attorneys work. *Id.* ¶ 24. Mr. Alizio's declaration states that numerous clients have in fact paid these rates. *Id.*

has only practiced special education law for several years, the Court believes that a rate of $350 appropriately balances Mr. Shane's prior experience and accords with fees awarded to other experienced attorneys in this district who are relative newcomers to IDEA litigation. *See also M.R.*, 2022 WL 3098347, at *4 (awarding Mr. Shane an hourly rate of $350).

As to Ms. Gremmel, who graduated law school in 2015 and had practiced for four years when this case began in 2019, a rate of $275 is reasonable, and properly balances her experience and the complexity of the case. *See id.* (awarding Ms. Gremmel an hourly rate of $275).

Finally, a reasonable rate for the paralegal work performed is $100 per hour for both Mr. Gonzalez and Ms. Ho. *R.G. v. N.Y.C. Dep't of Educ.*, No. 18-CV-6851 (VC), 2019 WL 4735050, at *3 (S.D.N.Y. Sept. 26, 2019) ("Paralegals, depending on skills and experience, have generally garnered between $100 and $125 per hour in IDEA cases in this District.") (collecting cases).

## II.      Number of Hours

District courts reviewing fee petitions must exclude "hours that are excessive, redundant, or otherwise unnecessary, allowing only those hours that are reasonably expended." *Hernandez v. Berlin Newington Assocs., LLC*, 699 F. App'x 96, 97 (2d Cir. 2017).   To determine the reasonableness of hours spent on a matter, "the district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award" by a reasonable percentage. *Hensley*, 461 U.S. at 436–37; *see also M.D. v. New York City Dep't of Educ.*, No. 17-CV-2417 (JMF), 2018 WL 4386086, at *4 (S.D.N.Y. Sept. 14, 2018) (quoting *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006)) ("Rather than engage in a painstaking line-item review of each billing entry, in calculating an appropriate reduction of compensable hours '[a] district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application.'").

Plaintiffs request compensation for 58.2 hours of work on the administrative proceeding and 68.5 total hours for compensation for the federal court litigation.  Alizio Decl. Exs. A–B; Alizio Reply Decl. Ex. A.  The DOE argues that Plaintiffs' counsel have billed excessive hours overall, that much of their work in this matter was recycled from other cases, and that the numerous 0.1-hour entries were unreasonable.  The Court agrees that some of Plaintiffs' billing entries evidence redundant or excessive billing practices and that a reduction is thus warranted.  Plaintiffs, moreover, are not entitled to *any* reimbursement after November 24, 2021, the date on which the DOE made a reasonable settlement offer of $16,000.

As Defendant correctly notes, it appears that Plaintiff's brief and some of the declarations in this federal case are copied in part from those submitted in two other cases in this district, *M.R. v. N.Y.C. Department of Education*, 21-CV-6668 (LGS)(SN) and *S.H.W. v. New York City Department of Education*, 21-CV-7003 (PGG)(OTW).  *See, e.g.*, Bowe Decl. ¶ 15.

Further, LOSA repeatedly billed in 0.1 increments for tasks that should not have taken more than several moments—a total of 84 in the federal case and 7.7 in the administrative proceeding.  *Id.*  Ms. Ho, for example, billed many entries of 0.1 hours for "[r]eview[ing] and sav[ing]" documents filed to ECF."  *Id.*  Mr. Alizio, additionally, repeatedly billed 0.1 hours, multiple times in the same day, for email correspondence.  *See* Alizio Decl. Ex. A (e.g., the billing entries for February 19, 2020).  "[W]hen an attorney on a single day bills multiple 0.1 hour entries for discreet tasks, where the tasks individually appear likely to have occupied less than 0.10 hour increments, such a practice can improperly inflate the number of hours billed beyond what is appropriate."  *C.D. v. Minisink Valley Cent. Sch. Dist.*, No. 17 Civ. 7632 (PAE), 2018 WL 3769972, at *8 (S.D.N.Y. Aug. 9, 2018).

LOSA also billed a total of 3 hours for reviewing and preparing its timesheets. Alizio Decl. Ex. A–B (2.6 hours billed for timesheet review during the administrative hearing alone). While it is appropriate for an attorney to review their billing records when preparing a fee application, the Court finds this amount of time to be excessive. *See Mugavero v. Arms Acres, Inc.*, No. 03 Civ. 5724 (PGG), 2010 WL 451045, at *8 (S.D.N.Y. Deb. 9, 2010).

Based on review of counsel's timekeeping records, the Court finds that a twenty-percent reduction of hours billed for the administrative proceeding and a twenty-five-percent reduction for the federal litigation will achieve "rough justice." *See Raja v. Burns*, 43 F.4th 80, 87 (2d Cir. 2022) ("[T]he Court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application."); *see also M.R.*, 2022 WL 3098347, at *5 (reducing LOSA's hours billed for the administrative proceeding by 20 percent); *R.P. v. N.Y.C. Dep't of Educ.*, No. 21-CV-4054 (JMF), 2022 WL 1239860, at *6 (S.D.N.Y. Apr. 27, 2022) (reducing hours for administrative proceeding and federal litigation by 20 and 30 percent respectively). While the timesheets for both the administrative proceeding and the federal action contain excessive hours, the Court finds that the hours attributable to this federal litigation were more inflated and redundant.

Finally, the DOE argues that Plaintiffs' counsel are not entitled to recover for any legal work performed after May 29, 2020—the day on which the DOE states that it first offered to pay the full tuition reimbursement. Alternatively, the DOE argues that if the Court "allows for recovery for work performed after May 29, 2020, and the Court awards a total amount under $16,000.00 for all work performed up through November 24, 2021, . . . LOSA should not be awarded any further compensation." Def.'s Opp. Br. at 6. This is because the DOE made a formal settlement offer on November 24, 2021 for $16,000.00, which Plaintiffs rejected.

Under the IDEA's fee-shifting provisions, a court may not award attorneys' fees and related costs "subsequent to the time of a written offer of settlement to a parent if" the court "finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement." 20 U.S.C. § 1415(i)(3)(d)(i).  Courts applying this provision have refused to award fees or costs for work performed after a written offer of settlement where the total fees and costs that the plaintiff was entitled to as of the date of the settlement offer was lower than the DOE's settlement offer.  *See, e.g.*, *R.P.*, 2022 WL 1239860, at *6 (declining to award any fees or costs incurred after the date of the DOE's written offer because the plaintiff was entitled to less in fees and costs).  Alternatively, when courts find that the fees and costs a plaintiff is entitled to through the date of the settlement offer exceeded the offered amount, they award fees for work performed after that date (though, if appropriate, at a reduced rate).  *See, e.g.*, *C.B. v. N.Y.C. Dep't of Educ.*, No. 18 Civ. 7337 (CM), 2019 WL 3162177, at *11–12 (S.D.N.Y. July 2, 2019).

Plaintiffs argue that the May 29, 2020 offer that the DOE relies on was not a formal written offer of settlement, but rather, an invitation to "negotiate the details and terms of ambiguous offers in principle."  Pls.' Reply Br. at 9.  As Plaintiffs rightly note, this offer to pay for C.L.G.'s tuition contained numerous ambiguous contingencies to which Plaintiffs were unwilling to agree.  *See* Goldman Decl. ¶ 11; Alizio Reply Decl. Ex. E.  The inclusion of these contingencies rendered the offer less favorable to the parents than the relief they finally obtained through the administrative proceeding.  Accordingly, the Court will not adjust what fees Plaintiffs are entitled to based on this date.

Consideration of the November 24, 2021 offer, however, commands a different result. Plaintiffs' objection to the November 24, 2021 offer was that "it did not include a specific timeline for payment," which "Plaintiffs requested that Defendant clarify."  Pls.' Reply Br. at 10.  But the

exclusion of a specific timeline for payment—which Defendant contends it "was in no position to make or agree to," Germanakos Decl. ¶ 47, because "state law governs that issue," Alizio Reply Decl. ¶ 8—did not make it an invalid settlement offer. *See* N.Y. C.P.L.R. § 5003-a.

Here, by the Court's calculations and applying the reductions discussed above, Plaintiffs were entitled to $15,987.00 through November 24, 2021.[5]  Because this amount is less than the $16,000.00 the DOE offered on that date, the Court will not award any fees or costs incurred thereafter.  The Court hopes that, in light of the amount of time and resources that both the parties—and the Court—expended on this federal litigation and the reasonableness of the DOE's November 24, 2021 settlement offer, Plaintiffs' counsel will take from this a lesson.

### III.    Costs

"A district court may award reasonable costs to the prevailing party in IDEA cases." *C.D.*, 2018 WL 2769972, at *12 (citing 20 U.S.C. § 1415(i)(3)(B)(i)(1)).  Plaintiffs only seek to recover the costs for the federal court filing fee of $402.  This fee, which is uncontested, is awarded.

### IV.    Post-Judgment Interest

Pursuant to 28 U.S.C. § 1961, "the award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Tru-Art Sign Co. v. Loc. 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017).  Accordingly, Plaintiffs shall be awarded post-judgment interest from the date judgment is granted.

---

[5] To calculate this total, the Court looked to the hours billed in the final invoices for both the administrative proceeding and the federal case.  *See* Alizio Decl. Exs. A–B.  The Court then subtracted any hours billed after November 24, 2021, and applied the hourly rate and hours expended reductions as discussed herein.

## CONCLUSION

For the foregoing reasons, the Court grants the motion for attorneys' fees and costs, as well as post-judgment interest, but with the following modifications:

(1)    LOSA is entitled to fees at: an hourly rate of $350 for Steven Alizio (reduced by fifty percent for billable travel time); an hourly rate of $350 for Justin Shane; an hourly rate of $275 for Jennifer Gemmel; and an hourly rate of $100 for Dianne Ho and Nazc-a-ru Gonzalez;

(2)    the number of hours billed by all LOSA attorneys and paralegals in the administrative proceeding is reduced by 20 percent;

(3)    the number of hours billed by all LOSA attorneys and paralegals in the federal litigation is reduced by 25 percent; and

(4)    Plaintiffs may only recover for fees and costs incurred through November 24, 2021.

No later than October 6, 2022, Plaintiffs shall submit a proposed judgment consistent with this decision.  The DOE will have until October 13, 2022 to lodge any objections.  The Clerk of Court is respectfully directed to terminate the motion pending at docket 17.

SO ORDERED.
Dated:      September 29, 2022
                New York, New York

RONNIE ABRAMS
United States District Judge